UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DAVID JAMES BRODIGAN, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:18-CV-273 JAR |
| DR. JONATHAN M. ROBERTS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff David James Brodigan (registration no. 517776), an inmate at Eastern, Reception, Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $27.31. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $136.58. Accordingly, the Court will assess an initial partial filing fee of $27.31.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## The Complaint

Plaintiff, an inmate at ERDCC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. He names the following individuals and entities as defendants in this action: Dr. Jonathan M. Roberts (Surgeon at St. Mary's Hospital in Jefferson City, MO); Dr. Theodore Willmore (Emergency Room physician at St. Mary's Hospital); Dr. Ben Swink

(Corizon, Inc.); Tracy Sutton (Nurse Practitioner, Corizon, Inc.); Missouri Department of Corrections; and Corizon, Inc.

Plaintiff states that he suffered from severe pain from an inguinal hernia approximately 2011 through 2016. Plaintiff asserts that during this period he filed a number of medical service requests with Corizon seeking treatment for this serious medical need and the surgical intervention that was required to correct the medical condition. Plaintiff claims that he was told on several occasions that Corizon was not going to pay for the emergent needed surgery because the cost of the procedure was too high.

Plaintiff asserts that "after approximately four and a half years of suffering in severe pain, the Corizon defendants transported me to St. Mary's Hospital in Jefferson City, MO, whereupon defendant Jonathan Roberts performed an emergency surgery upon me for the right inguinal hernia..."

Plaintiff alleges that after the surgery, sometime around June of 2016, he continued to suffer severe pain in his testicular area. He asserts that he was brought to Vista imaging in Festus, Missouri for an ultrasound of his pelvis, and the results showed a "significantly decreased blood flow relative to the left testicle, as well as torsion of the right testicle." Plaintiff alleges that "in the Corizon Medical Accountability Records System ("MARS"), Dr. Saad Nassar, as well as Technical Dalana Mauk, opined that the 'Findings are concerning for incomplete testicular torsion,' the patient should go to the emergency department and or be seen by a urologist emergently.'" Plaintiff states that "the technician further advised the transporting officer that plaintiff 'could lose a testicle' if not transported to the emergency department right now."

Plaintiff asserts that he was taken to the ER, however, the ER doctor, defendant Wilmore, stated without examining plaintiff or his ultrasound scans, that what he was experiencing was normal, and he should be taken back to the prison.

- 3 -

Plaintiff states that from July 8, 2016 through October 15, 2016, he was in excruciating pain and several doctors and nurses, refused him pain treatment for his purported torsion, except for Tylenol. The doctors included defendant Swink, defendant Roberts (seen by Tel-Med), as well as Nurse Jessica Engle.

Plaintiff states that when he asked to once again be sent to a specialist outside of the prison, defendant Swink told him that "he had already been sent out to Vista Imaging and the Emergency Room and Corizon is not going to keep paying for all these outside visits." Plaintiff alleges defendant Swink then denied him further treatment and all forms of pain control.

In August of 2016, plaintiff alleges that he was seen by Tel-Med by Dr. Roberts, whereupon he told Dr. Roberts he was suffering from excruciating pain of the right testicle and surrounding area, and that the right testicle was twisted sideways and pulled up. Plaintiff states that defendant Roberts "refused to provide him with treatment and denied him all forms of pain control." Plaintiff states that he felt defeated and helpless, but he was in so much pain he kept placing medical requests.

Plaintiff states that on October 20, 2016, he saw Nurse Jessica Engle. Plaintiff claims he once again told Nurse Engle that he had severe pain in his testicle and he needed to see a doctor on an emergent basis. Plaintiff specifically asked to see Dr. Swink. Plaintiff alleges he also told Nurse Engle that the Tylenol he was being given was not effective to control his pain. Nurse Engle allegedly told plaintiff that he could not see the doctor and there was no need to provide him with anything other than Tylenol.

Plaintiff claims that by the end of October 2016, his right testicle had shrunk to the size of a pecan. Plaintiff claims that the membrane that "made up the entire mass of what the right testicle used to be felt like a ball of raw nerve and was excruciatingly painful to touch." He claims that when he next placed a medical request, it fell to Nurse Shannon Oaks who

recognized the emergent nature of the situation and made plaintiff an appointment with Dr. Roberts. Rather than see plaintiff again, however, Dr. Roberts canceled plaintiff's appointment and referred plaintiff to an outside urologist in November of 2016.

Plaintiff states that the unnamed urologist told him his right testicle was "dead and atrophied" and it was "pointless to have surgical intervention now because of the delay in emergently needed surgery in June 2016." The doctor told plaintiff that the pain in the testicle was due to the nerves dying and he prescribed plaintiff a nerve medication called Neurontin for the pain.

Plaintiff returned to ERDCC and on November 22, 2016, he had a follow-up appointment with Nurse Oaks. Nurse Oaks told plaintiff that she would order the Neurontin to be filled. On November 29, 2016, plaintiff submitted another medical request indicating he had not received the Neurontin. Again, on December 2, 2016, plaintiff told Nurse Engle he had not received the Neurontin. He told Nurse Engle the nerve pain was worsening, and she told him he would be referred to the doctor.

On December 6, 2016, plaintiff was seen by Nurse Practitioner Sutton regarding his worsening nerve pain in his pelvic region. Plaintiff told Nurse Sutton about the appointment with the urologist and the prescription he had been given for Neurontin but still had not received. Nurse Sutton told plaintiff that he had been given Tylenol and that would be all the pain medication he would be receiving.

On December 17, 2016, plaintiff submitted another request for medical treatment. And on December 27, 2016, when he did not receive any additional medical treatment, plaintiff requested mental health treatment. Plaintiff claimed that as a result of almost constant pain over several years, he was suffering from depression, anxiety and post-traumatic stress. Plaintiff submitted additional medical requests on December 31, 2016 and January 26, 2017.

Plaintiff was finally seen in regards to his medical requests by Nurse Richard Humble on February 13, 2017. Nurse Humble referred plaintiff back to Nurse Sutton for an appointment on February 28, 2017. On that date, plaintiff again told Nurse Sutton about his extreme pain in his pelvic region, as well as his constant nerve pain. Plaintiff claims that Nurse Sutton told him, "You are not a young man anymore. That is probably why you are taking so long to heal." Plaintiff claims Nurse Sutton denied him all forms of medical treatment at the appointment.

Plaintiff asserts that this denial of treatment went on for seven additional months[1] until he met with Nurse Angela Adams on December 19, 2017. On that date, when plaintiff gave Nurse Adams his medical history and complained of the pain in his pelvic region, Nurse Adams prescribed plaintiff the nerve pain reliever Amitriptyline. Plaintiff claims that Nurse Adams told him that "there was no reason for [him] to suffer like this for more than a year."

Plaintiff claims that Corizon and its employees have an unconstitutional policy of denying medical care predicated on the cost of treatment or the costs of procedures. Plaintiff claims that this is done to the detriment of their patients' health.

Plaintiff seeks monetary damages and injunctive relief.

## Discussion

After review of plaintiff's allegations in his complaint, the Court will issue process or cause process to issue on plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs against the following individual defendants in their individual capacities:

---

[1] Plaintiff claims he was denied treatment by defendant Sutton in May 2017, as well as Nurse Practitioner Owens in June 2017. Plaintiff states that he was denied treatment by Nurse Amy Wallen and Dr. Zakaroff in September 2017. Plaintiff has not named Nurse Jessica Engle; N.P. Owens; Nurse Amy Wallen; or Dr. Zakaroff as defendants in the caption of the complaint. However, he has made allegations against these individuals in the body of the complaint as to denial of medical care. For that reason, the Court will include these individuals as defendants in this action.

Doctor Ben E. Swink; Nurse Tracy Sutton; Nurse Amy Wallen; Nurse Practitioner Unknown Owens; Doctor Unknown Zakaroff; and Nurse Jessica Engle.

The Court will also issue process on plaintiff's claim against Corizon, Inc. for his assertion that Corizon and its employees have an unconstitutional policy of denying medical care predicated on the cost of treatment or the costs of procedures. Plaintiff claims that this is done to the detriment of their patients' health. [2]

The complaint, however, fails to state a claim against the Missouri Department of Corrections ("MDOC"). *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power is not "person" subject to § 1983 suit). As a result, the complaint shall be dismissed as to MDOC pursuant to 28 U.S.C. § 1915(e)(2)(B).

And plaintiff cannot state a cause of action under 42 U.S.C. § 1983 against Dr. Jonathan Roberts or Dr. Theodore Willmore, as plaintiff does not allege, nor is it apparent, that these individuals were acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law). These doctors appear to be

---

[2] Although the Court will allow this unlawful policy claim to pass § 1915 review, the Court is mindful that not all allegations in a complaint are entitled to an assumption of truth. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). For example, a complaint cannot survive § 1915 review with just threadbare recitals of the elements of a cause of action or unsupported, conclusory statements. *Id.* at 1949. However, at this juncture, the Court has made a context-specific review of plaintiff's allegations in this case, drawing upon its judicial experience and plaintiff's factual allegations. *Id.* at 1950. Plaintiff states in his complaint that he was told on several occasions between 2011 and 2016, in relation to his medical service requests, that he was not allowed to have surgical intervention for his inguinal hernia because the cost of the procedure was too high. Plaintiff also claims in his complaint that Dr. Swink told him that "Corizon is not going to keep paying for all of these outside visits."

employed by St. Mary's Hospital in Jefferson City and thus cannot be held liable as state actors under § 1983.

Last, the Court will deny plaintiff's request for appointment of counsel at this time as the Court does not believe that the factual and legal issues involved in this action are complex. Further, it appears that plaintiff is able to represent his own interests at this time. *See, e.g., Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $27.31 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend his complaint by interlineation to add his prayer for relief [Doc. #8] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #5] is **DENIED AT THIS TIME**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall add the following individuals as defendants in this action as they were named in the body of plaintiff's complaint:

Nurse Jessica Engle; Nurse Practitioner Unknown Owens; Nurse Amy Wallen; and Dr. Unknown Zakaroff.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Doctor Ben E. Swink; Nurse Tracy Sutton; Nurse Amy Wallen; Nurse Practitioner Unknown Owens; Doctor Unknown Zakaroff; and Nurse Jessica Engle. These defendants shall be served in their individual capacities through the service agreement the Court maintains with Corizon, Inc.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Corizon, Inc. This defendant shall also be served through the service agreement the Court maintains with Corizon, Inc.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Nurse Jessica Engle; Nurse Practitioner Unknown Owens; Nurse Amy Wallen; Dr. Unknown Zakaroff and Corizon, Inc. shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants the Missouri Department of Corrections, Doctor Jonathan Roberts, and Doctor Theodore Willmore because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 3rd day of August, 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE