**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID JAMES BRODIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-00273-JAR |
| | ) | |
| BEN E. SWINK, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendants Corizon, LLC ("Corizon"), Dr. Ben Swink,

Nurse Practitioner ("NP") Tracy Sutton, Registered Nurse ("RN") Jessica Engle, NP Shannon

Owens, NP Amy Wallen, and Dr. Sandra Zakroff's Motion for Summary Judgment. (Doc. 130).

The motion is fully briefed and ready for disposition.[1] For the reasons discussed below, the motion

will be granted.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

During all times relevant to the First Amended Complaint (Doc. 79), Plaintiff David James

Brodigan was incarcerated at Eastern Reception, Diagnostic and Correctional Center. (Doc. 132

at ¶ 1).[2] All individual Defendants are healthcare providers and employees of Corizon, which

---

[1] The Court recognizes that the COVID-19 pandemic has created logistical challenges for Plaintiff and appreciates that Plaintiff has timely requested appropriate extensions of deadlines. Certain filings in response to the instant motion were delayed by no fault of Plaintiff. (Docs. 141; 146; 149-152). In its discretion, this Court accepts Plaintiff's delayed filings as operative.

[2] Defendants filed a Statement of Material Facts ("SMF") along with their Motion for Summary Judgment. (Doc. 132). Plaintiff has filed a response challenging certain facts in the SMF. (Doc. 144). While Plaintiff's response does not comply with the requirements of E.D. Mo. L.R. 4.01(E), it clearly addresses areas of material disagreement with the SMF and is accepted in this Court's discretion. All facts not addressed in Plaintiff's response are deemed admitted for purposes of this Motion for Summary Judgment.

contracts with the State of Missouri to provide medical care and treatment to inmates within the Missouri Department of Corrections ("MDOC"). (*Id.* at ¶¶ 2-8).

Plaintiff brought this case pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs. Plaintiff's claims cover a nearly eight-year period but generally concern Defendants' alleged failure to adequately treat Plaintiff's right inguinal hernia. Beyond alleging deliberate indifference against each of the individual Defendants, Plaintiff claims that Corizon "has an unconstitutional policy, custom[], and practice to deny medical care predicated upon the cost of the treatment or procedure, and to the detriment of their patient's health, welfare and constitutional rights." (Doc. 79 at ¶ 96).

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show[] that there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because Plaintiff is proceeding pro se, this Court construes his filings liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

2

### III.      PLAINTIFF'S MEDICAL HISTORY

Some facts remain disputed in this case, as demonstrated by Plaintiff's 105-page response to the SMF. (Doc. 144). Before addressing the parties' specific legal arguments, however, it is helpful to at least outline those portions of Plaintiff's relevant medical history acknowledged by both parties. In early 2012, Plaintiff was diagnosed by Corizon staff as having a right inguinal herniation, or a medical condition where tissue protrudes through a weak spot in the abdominal muscle, with the resulting bulge potentially causing pain and discomfort. (Doc. 132 at ¶¶ 11-12; Doc. 144 at ¶ 2). Throughout 2012, Plaintiff submitted multiple Medical Services Requests ("MSRs") indicating that his hernia was causing substantial pain, and Plaintiff received services accordingly. (Doc. 132 at ¶¶ 13-18; Doc. 144 at ¶¶ 9-19). On December 3, 2012, Corizon employee Dr. Mullen performed a physical exam, determined Plaintiff's hernia was non-reducible, and placed a referral for a CT scan. (Doc. 132 at ¶¶ 18-19; Doc. 144 at ¶¶ 20-21). Plaintiff received a CT scan at Vista Imaging of Jefferson County on December 19, 2012 which showed "right greater than left fat containing inguinal ring defects are appreciated. No bowel loop herniation." (Doc. 132 at ¶ 20; Doc. 132-1 at 760).[3]

The next few years follow a similar pattern. Plaintiff repeatedly complained of hernia symptoms, frequently submitting MSRs and sometimes self-declaring medical emergencies due to intolerable pain. (Doc. 132 at ¶¶ 22-31; Doc. 144 at ¶¶ 22-49). Finally, on March 18, 2016, NP Owens determined that Plaintiff's hernia was non-reducible and had increased in size and accordingly requested a referral for consultation with general surgery. (Doc. 132 at ¶ 32; Doc. 144

---

[3] Defendants contend that Plaintiff's hernia was not consistently present from 2012 to 2016. There are medical records at least indicating that the hernia had "gone back down" or otherwise was not present at certain points in time. (Doc. 145 at 33, 39). Plaintiff disputes these findings.

at ¶ 54).[4] Plaintiff filed an Informal Resolution Request ("IRR") the same day complaining of inadequate treatment and requesting hernia repair surgery. (Doc. 132 at ¶ 33). In April 2016, Plaintiff had a telehealth appointment with off-site surgeon Dr. Jonathan Roberts of Jefferson City Medical Group. (Doc. 132 at ¶ 39; Doc. 144 at ¶¶ 55-59). After reviewing Dr. Roberts' diagnosis, Corizon Regional Medical Director Hammerly approved the surgery referral, and Plaintiff underwent hernia surgery on June 22, 2016 at St. Mary's Hospital in Jefferson City, MO. (Doc. 132 at ¶¶ 40-50; Doc. 144 at ¶ 61). The above events can be described as Plaintiff's "Pre-Surgery Treatment," while the below events constitute the "Post-Surgery Complications."

Plaintiff began experiencing complications shortly after the surgery. On each of June 27, 2016 and July 8, 2016, Plaintiff self-declared medical emergencies due to intolerable pain in his groin and right testicle. (Doc. 132 at ¶¶ 60-64; Doc. 144 at ¶ 71). On the latter date, Plaintiff received an off-site ultrasound at Vista Imaging which revealed decreased blood flow to the right testicle and partial testicular torsion; the radiologist recommended that Plaintiff be sent to the emergency room. (Doc. 132 at ¶ 55; Doc. 144 at ¶ 72; Doc. 133-1 at 153). Plaintiff was transported to St. Mary's Hospital in Jefferson City, Missouri, which is allegedly over two hours from Vista Imaging. (Doc. 132 at ¶¶ 66-67; Doc. 144 at ¶¶ 75-81). Plaintiff strongly disputes the explanation offered by Defendants as to why Plaintiff was transported to such a distant emergency room. After being admitted to the St. Mary's Hospital emergency room at 7:00 P.M., the emergency room physician (Dr. Wilmore) consulted with the on-call general surgeon (Dr. Petersen) and urologist (Dr. Trulson). (Doc. 132 at ¶¶ 68-70; Doc. 144 at ¶¶ 82-85). Dr. Wilmore ultimately concluded that Plaintiff had postoperative right inguinal hernia swelling with resulting diminished blood flow,

---

[4] Plaintiff disputes NP Owens' characterization of the changes in Plaintiff's symptoms. Plaintiff argues that the lump had become "harder and more sensitive to the touch" but "[n]one of the hernia symptoms" described by NP Owens "were new symptoms. The [P]laintiff had been experiencing them for years." (Doc. 144 at ¶ 54).

noting that this was a "normal postoperative finding" and Plaintiff could be discharged. (Doc. 132 at ¶ 70; Doc. 133 at 154).

Plaintiff had a follow-up telehealth visit with his outside surgeon, Dr. Roberts, on August 9, 2016. (Doc. 132 at ¶ 77; Doc. 144 at ¶ 120). Over the following few months, Plaintiff submitted multiple MSRs noting that he continued to experience complications from hernia surgery and that his right testicle had "drastically shrunk in size and was hard with little feeling to it." (Doc. 132 at ¶¶ 79-86; Doc. 144 at ¶¶ 123-129). Eventually, NP Oaks placed a referral for Plaintiff to be evaluated by an off-site urologist. (Doc. 132 at ¶ 89). Plaintiff had an appointment with an outside urologist, Dr. Trulson, on November 22, 2016. Dr. Trulson assessed possible neuropathic pain from nerve compression, stated that Plaintiff should function fine with one testicle, and did not recommend any further surgical intervention. (Doc. 132 at ¶ 92). Dr. Trulson also indicated that Plaintiff "can trial Neurontin for nerve pain, but otherwise would plan to observe," though Plaintiff alleges that Dr. Trulson had stated that Neurontin was necessary. (*Id.*; Doc. 144 at ¶¶ 133-139; Doc. 133 at 352). Over the next few years, Plaintiff continued to submit numerous MSRs predominantly alleging numbness or pain in the groin and testicular area. (Doc. 132 at ¶¶ 93-121; Doc. 144 at ¶¶ 140-162). On August 3, 2018, Plaintiff filed suit against Defendants. (Doc. 11-1).

## IV.   DISCUSSION

### A.   Exhaustion of Pre-Surgery Treatment Claims[5]

Plaintiff alleges that Defendants failed to address his hernia pain and delayed necessary surgery from 2012 to 2016. (Doc. 79 at ¶¶ 1-36). Pursuant to the Prison Litigation Reform Act

---

[5] The only individual Defendants involved with Plaintiff's Pre-Surgery Treatment are NP Reinholdt, NP Owens, and RN Emilee Garcia. This Court previously granted NP Reinholdt's Motion to Dismiss. (Doc. 127). It appears that process was never successfully served on RN Garcia. (Doc. 124). Defendants RN Garcia and NP Reinholdt were part of the same interaction with Plaintiff, and RN Garcia would have been dismissed for the same reasons as NP Reinholdt if she had been properly served.

("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Courts in this district have consistently confirmed that the PLRA's exhaustion requirement applies to claims of deliberate indifference against entities like Corizon and their employees. *See Arnold v. Corizon, Inc.*, No. 1:15-CV-62 SNLJ, 2016 WL 520950 (E.D. Mo. Feb. 10, 2016); *Nettles v. Lombardi*, No. 1:13-CV-146 JAR, 2015 WL 5098729 (E.D. Mo. Aug. 31, 2015).

A prison's grievance procedures govern the requirements of exhaustion under the PLRA. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). For an MDOC inmate, exhaustion requires filing of an IRR, Offender Grievance, and Offender Grievance Appeal. (Doc. 132 at ¶ 34). *See Foulk v. Charrier*, 262 F.3d 687, 694 (8th Cir. 2001); *Barnett v. Hill*, No. 1:19-CV-00008-JAR, 2020 WL 440561, at *3 (E.D. Mo. Jan. 28, 2020). Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the Pre-Surgery Treatment claims because his only exhausted grievance concerned the Post-Surgery Complications. Plaintiff "does not dispute the general proposition that prisoners must properly exhaust available administrative remedies" but argues that he filed numerous grievances and that his exhausted grievance relates back to the Pre-Surgery Treatment. (Doc. 143 at 2-4).

Plaintiff filed numerous IRRs, as evidenced by the 150-page compilation of Plaintiff's grievance documents submitted by Defendants. (Doc. 133-1). It is apparent, however, that Plaintiff only exhausted one relevant grievance (Grievance #ERDC-16-2195). In the underlying IRR, submitted by Plaintiff on November 30, 2016, Plaintiff alleged medical malpractice, indifference, and negligence, stating the following:

> After several years of [Medical Services Requests] & IRRs complaining hernia pain in groin area I was sent out for surgery, after which I began to experience severe pain and discomfort in testic[le] area. Was sent out for ultrasound and informed of restricted blood flow to right testic[le] sent back to hospital where unknown doctor informed me surgeon said it was normal, saw ERDCC doctor, he said the same. Saw surgeon on telemed, he once again said normal. Now right testic[le] is dead. (Doc. 133-1 at 32).

In response to Plaintiff's Grievance Appeal, Corizon concluded that while Plaintiff did suffer damage to the right testicle from surgery, "staff were attentive to your complaints and responded by obtaining imaging, sending you to the emergency room for evaluation, referring you to the operating surgeon, and referring you to the urologist for further evaluation." (Doc. 133-1 at 1-2).

The Supreme Court has clarified that the PLRA's statutory exhaustion requirement "suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). It is apparent from the record that Plaintiff's only exhausted grievance exclusively concerns the Post-Surgery Complications and does not relate back to Pre-Surgery Treatment. *Muhammad v. Mayfield* is instructive. 933 F.3d 993 (8th Cir. 2019). In *Muhammad*, the Eighth Circuit held that the plaintiff's exhausted grievances concerning the presence of pork in the prison's pork-free diet did not raise the otherwise unexhausted issue, and the one before the Court, of plaintiff seeking daily halal meals. *Id.* at 1002-03. The grievance exhausted by the plaintiff in *Muhammad* was clearly somewhat similar to the claim before the Court, but that was not sufficient for exhaustion under the PLRA.

Here, there is simply no indication that Grievance #ERDC-16-2195, filed roughly five months after Plaintiff's hernia surgery and clearly concerning the Post-Surgery Complications, exhausts Plaintiff's claims as to the Pre-Surgery Treatment.[6] Because there is no genuine dispute of material

---

[6] Plaintiff did submit an IRR and Offender Grievance in Spring 2016 regarding the delay in receiving hernia surgery (Doc. 133-1 at 138-142), but he did not exhaust this grievance, presumably because he was ultimately scheduled for surgery. Plaintiff has not brought forth any evidence suggesting that his failure to exhaust should be excused because a remedy was unavailable. *See Muhammad*, 933 F.3d at 1000 (quoting *Ross*, 136 S. Ct. at 1859-60) (An administrative

fact on this issue, summary judgment can be granted in favor of Defendants on all claims concerning the Pre-Surgery Treatment.[7] This Court will still proceed in the alternative, however, and substantively address Plaintiff's claims of deliberate indifference prior to surgery.

B. Deliberate Indifference

Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531-32 (8th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). To make such a claim, a plaintiff must "make two showings – one objective and one subjective." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). First, the plaintiff must prove he or she suffered an objectively serious medical need, which is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camboros v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Second, the plaintiff must demonstrate that the defendant deliberately disregarded the need, acting with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). The required state of mind for culpability "approach[es] actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

"Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014)

---

remedy is unavailable "(1) where 'it operates as a simple dead end – with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates,' (2) where the 'administrative scheme' is so 'opaque' as to be practically 'incapable of use,' and (3) where 'administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"). Instead, it appears that Plaintiff was scheduled for surgery soon after filing his IRR.

[7] This Court has dismissed NP Reinholdt on related grounds, noting that Plaintiff's receipt of hernia repair surgery shortly after he filed an IRR "illustrat[es] that the administrative review process was available and functioning." (Doc. 127 at 5).

(citing *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)). Instead, deliberate indifference "requires the 'unnecessary and wanton infliction of pain.'" *Choate*, 7 F.3d at 1374 (quoting *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990)); *see also Fourte*, 746 F.3d at 387 (citations omitted) ("Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

Plaintiff evidently suffered from a genuinely serious medical need as to both the Pre-Surgery Treatment and Post-Surgery Complications, and Defendants do not suggest otherwise. Courts in this circuit and the Eighth Circuit Court of Appeals itself have repeatedly confirmed that a hernia requiring surgery constitutes a serious medical need. *See Johnson v. Lockhart*, 941 F.2d 705 (8th Cir. 1991); *Hancock v. Arnott*, 2019 WL 1578768 (W.D. Mo. Apr. 2, 2019); *Williams v. Chandler*, No. 4:05-CV-00661 ERW, 2006 WL 2795382 (E.D. Mo. Sept. 27, 2006). Plaintiff's Post-Surgery Complications, which required emergency treatment and allegedly resulted in the loss of Plaintiff's right testicle, so obviously constitute a serious medical need that a layperson can recognize them as requiring a doctor's attention. Therefore, the only question as to each of the individual Defendants is whether they deliberately disregarded Plaintiff's serious medical needs.

The Court notes that Plaintiff has substantially disputed the accuracy of his own medical records. As to virtually each individual Defendant, Plaintiff alleges that the medical records and treatment notes do not accurately reflect his own statements or the care he received. The Eighth Circuit has advised that "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1242 (8th Cir. 1997). While Courts do not weigh evidence and decide the truth of the matter at the summary judgment stage, summary judgment may be appropriate

9

when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### (1) Dr. Swink

Dr. Swink first visited Plaintiff in the Transitional Care Unit ("TCU") following Plaintiff's hernia surgery. (Doc. 132 at ¶ 52). Plaintiff claims that he informed Dr. Swink on June 24, 2016 that there was an "alarming amount of bruising that covered the [P]laintiff's [e]ntire groin region" and that Plaintiff's penis was swollen, but Dr. Swink only recommended ice and rest. (Doc. 144 at ¶ 62). Dr. Swink observed the swelling but believed it was normal after hernia surgery. (Doc. 132 at ¶¶ 52-53). This determination is consistent with the "Surgical/Procedure Care Instructions" from St. Mary's Hospital, which Plaintiff signed and specifically provide that "[i]t is common to have a bruise around one or more incisions." (Doc. 133-11 at 124). Dr. Swink ordered Prednisone, Colace (a stool softener), and rest/ice for Plaintiff, and planned a follow-up appointment for three days later. (*Id.*). On the morning of June 27, 2016, Dr. Swink released Plaintiff from the TCU after Plaintiff indicated he was "doing fine today" and requested release back to his housing area. (*Id.* at ¶ 59). Dr. Swink ordered ibuprofen and Hydrocodone RDN for pain and limited Plaintiff to lifting no more than 10 pounds. (*Id.*; Doc. 133-2 at ¶ 10).

Later that same day, Plaintiff self-declared a medical emergency for hernia pain and increased swelling. (Doc. 132 at ¶ 60; Doc. 144 at ¶ 63). The responding nurse consulted with Dr. Swink who proceeded to order Plaintiff Norco for an additional five days to treat pain. (*Id.*). Plaintiff did not visit with Dr. Swink again until July 15, 2016, one week after Plaintiff obtained an ultrasound at Vista Imaging and visited the St. Mary's Hospital emergency room. (Doc. 132 at ¶¶ 74-75; Doc. 144 at ¶¶ 107-115). According to Defendants, Dr. Swink relied on the judgment of the surgeon and urologist at St. Mary's and determined that no further off-site evaluation was

10

necessary because Plaintiff's symptoms were normal for post-operative recovery from inguinal hernia surgery. (Doc. 132 at ¶ 75; Doc. 133-2 at ¶ 13). Plaintiff disputes the adequacy of Dr. Swink's physical examination and alleges that Dr. Swink failed to prescribe necessary pain medication. (Doc. 144 at ¶¶ 107-115).

While Plaintiff disputes numerous facts regarding his treatment by Dr. Swink, a reasonable factfinder could not conclude that Dr. Swink was deliberately indifferent to Plaintiff's serious medical need based upon the undisputed facts before this Court. Dr. Swink visited Plaintiff multiple times in the TCU and only discharged Plaintiff upon request and after Plaintiff indicated he was "doing fine." Dr. Swink prescribed pain medication and limited Plaintiff's physical activities. Finally, after Plaintiff's trip to the emergency room, Dr. Swink appropriately relied upon the opinions of specialist physicians, the surgeon and urologist at St. Mary's Hospital, in determining that Plaintiff's post-surgery complications were normal and did not require further off-site evaluation. Other courts have recognized that scrotal swelling can be a normal result of hernia repairs. *Thomas v. Fed. Bureau of Prisons*, C.A. No. 15-209ERIE, 2018 WL 4636208, at *5 n.3 (W.D. Pa. Sept. 27, 2018).

It is clear from the record that Plaintiff's complications after hernia surgery were consistently addressed by Dr. Swink even if Plaintiff was not always entirely satisfied with the result. The Eighth Circuit has repeatedly held that "mere negligence or inadvertence does not rise to the level of deliberate indifference." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Even if it appears that Dr. Swink should have been more aggressive in treating Plaintiff's Post-Surgery Complications in retrospect, there is simply no evidence that Dr. Swink deliberately ignored Plaintiff's serious medical needs. Ultimately, "[p]hysicians are entitled to exercise their medical

judgment." *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) (citing *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (per curiam)). Summary judgment in favor of Dr. Swink is warranted.

### (2) RN Engle

RN Engle visited with Plaintiff a few times in late 2016 in response to Plaintiff's MSRs concerning the Post-Surgery Complications and once again in late 2017 for unrelated dermatological issues. (Doc. 132 at ¶¶ 79-83, 95, 113; Doc. 144 at ¶¶ 123-125, 141). Plaintiff alleges that RN Engle failed to prescribe adequate pain medication or refer Plaintiff to Dr. Swink when medically necessary. In an affidavit before this Court, RN Engle claims that during her encounters with Plaintiff in October 2016 she "observed no symptoms . . . which indicated that [Plaintiff] needed to see a medical provider or needed additional pain medications on an urgent or emergent basis." (Doc. 133-4 at ¶ 11). When Plaintiff returned on December 2, 2016, she referred Plaintiff to NP Sutton, who Plaintiff saw four days later. (*Id.* at ¶ 14).

This Court finds no basis in the record from which a reasonable factfinder could conclude that RN Engle was deliberately indifferent to Plaintiff's serious medical needs during these limited interactions. RN Engle ordered Tylenol as necessary and ensured that referrals were made to Dr. Swink and NP Sutton when appropriate in her medical judgment. (Doc. 133 at 169-178). During this period, moreover, Plaintiff received treatment from NP Oaks and consulted with his surgeon and a urologist. (*Id.* at 171-74). RN Engle's role was to respond to MSRs during "nurse sick call," a "process in which patients are evaluated for referral to a Corizon medical provider, such as a physician or nurse practitioner." (Doc. 133-4 at ¶ 6). Her job as an RN did *not* include "formulating treatment plans, referring patients for off-site care, or prescribing medications." (*Id.* at ¶ 7). It is apparent from the undisputed facts before this Court that RN Engle provided Plaintiff medical care within the scope of her duties and made appropriate referrals to Corizon providers.

12

### (3) NP Sutton

As discussed above, Plaintiff visited NP Sutton on December 6, 2016 upon referral from RN Engle. (Doc. 132 at ¶ 96; Doc. 144 at ¶¶ 142-43). NP Sutton also treated Plaintiff's Post-Surgery Complications on December 22, 2016 and February 28, 2017. (Doc. 132 at ¶ 98, 104). During these encounters. NP Sutton advised Plaintiff as to an appropriate timeline for resuming normal activities and ensured that Plaintiff did not have any further complications. (Doc. 133 at 194). Plaintiff alleges that NP Sutton was deliberately indifferent because she refused to prescribe Neurontin for Plaintiff's nerve pain (Doc. 144 at ¶¶ 142-45, 149).

The Eighth Circuit has consistently held that disagreement over treatment decisions regarding pain medication does not rise to the level of deliberate indifference. *Kenyon v. Dooley*, 605 Fed. App'x 581 (8th Cir. 2015) (per curiam); *Floyd v. Cabrerra*, 559 Fed. App'x 603 (8th Cir. 2014) (per curiam); *Steele v. Webber*, 278 Fed. App'x 699 (8th Cir. 2008) (per curiam). *Compare Dadd v. Anoka Cty.*, 827 F.3d 749 (8th Cir. 2016) (finding deliberate indifference where no pain medication was provided). As discussed above, Plaintiff's outside urologist stated that the providers "can trial Neurontin for nerve pain," but otherwise would plan to observe. (Doc. 133 at 352). In an affidavit before this Court, NP Sutton has stated that Neurontin "was not medically necessary to treat Plaintiff's postoperative pain during the times [she] evaluated him" because Plaintiff "did not exhibit symptoms of uncontrolled pain" during any of her encounters with Plaintiff. (Doc. 133-3 at ¶ 17). NP Sutton also noted that Neurontin is a "potentially addictive medication that carries a high concern for abuse via hoarding and trading in the correctional setting." (*Id.*). A reasonable factfinder could not conclude that NP Sutton was deliberately indifferent in declining to prescribe Neurontin based on her medical judgment.[8]

---

[8] The discharge notes from St. Mary's Hospital specifically discuss limiting intake of addictive narcotics after surgery and instead replacing their use with over-the-counter medications. (Doc. 133-11 at 125-26).

**(4) NP Owens**

NP Owens first saw Plaintiff on March 18, 2016, when she diagnosed Plaintiff's hernia as non-reducible and placed a referral for consultation with general surgery. (Doc. 132 at ¶ 32). On April 18, 2016, after reviewing the records of Plaintiff's telehealth appointment with Dr. Roberts, the outside surgeon, NP Owens placed a request for hernia repair surgery. (*Id.* at ¶ 40). Over the next few months, NP Owens worked to reschedule Plaintiff's surgery, which had to be delayed due to Plaintiff's unrelated dental issues. (*Id.* at ¶¶ 44-49). After Plaintiff's surgery, NP Owens entered Dr. Swink's orders for Norco, light duty, and a jock strap. (*Id.* at ¶ 61). Finally, in June and July of 2017, NP Owens met with Plaintiff to discuss his back pain and Post-Surgery Complications. (*Id.* at ¶¶ 109-110). As with NP Sutton, Plaintiff alleges that NP Owens was deliberately indifferent for failing to prescribe Neurontin during these 2017 encounters. (Doc. 144 at ¶¶ 153-154). NP Owens' notes from her June 2017 encounter with Plaintiff specifically state that Plaintiff only complained of numbness, which he described as "not a pain just tingling sensation." (Doc. 133 at 214).[9]

As to Plaintiff's Pre-Surgery Treatment, it is clear from the facts admitted by Plaintiff that NP Owens was not deliberately indifferent to Plaintiff's serious medical needs. NP Owens promptly placed a referral for surgery consultation after meeting with Plaintiff and proceeded to request hernia repair surgery upon review of the notes from such consultation. (Doc. 133-5 at ¶¶ 9-10). As to NP Owens declining to prescribe Neurontin, summary judgment is warranted for the same reasons discussed above as to NP Sutton and because Plaintiff never informed NP Owens

---

[9] NP Owens has provided additional support for her claim that Plaintiff did not suffer from excruciating pain. She notes, for example, that Plaintiff "did not grimace or squirm in his chair, and his blood pressure readings were not consistent with symptoms of uncontrolled pain." (Doc. 133-5 at ¶ 17).

that he was suffering from serious nerve pain, and he did not exhibit symptoms of uncontrollable pain. (Doc. 133-5 at ¶¶ 16-18).

### (5) NP Wallen

NP Wallen only met with Plaintiff once concerning the Post-Surgery Complications, on September 6, 2017. (Doc. 132 at ¶ 115). The notes from this encounter reflect that Plaintiff "complain[ed] of numbness in groin" but also "denie[d] changes since surgery." (Doc. 133 at 229). Plaintiff has not brought forth any evidence to suggest that NP Wallen was deliberately indifferent to Plaintiff's serious medical needs during this sole encounter. NP Wallen assessed Plaintiff as having post-surgical numbness, provided education, and asked Plaintiff questions to ensure there were no further complications. (*Id.*). This does not constitute deliberate indifference.

### (6) Dr. Zakroff

On November 28, 2017, Plaintiff met with Dr. Zakroff concerning his chronic back pain, and during this encounter Plaintiff mentioned his hernia surgery. (Doc. 132 at ¶ 117). Dr. Zakroff's notes reflect that Plaintiff requested Tylenol but declined certain other medications. (Doc. 133 at 250-51). It is apparent from the medical record that this encounter almost exclusively concerned Plaintiff's treatment for chronic back pain, which is not relevant to this case. As Dr. Zakroff explained in her affidavit before this Court, "Plaintiff mentioned being sedentary as a result of having previous hernia surgery, but he did not complain of pain or numbness in the groin to me at that encounter or request any additional treatment related to his groin or testicles." (Doc. 133-7 at ¶ 9). Plaintiff has not brought forth any evidence to suggest that Dr. Zakroff was deliberately indifferent to Plaintiff's Post-Surgery Complications, which were essentially not at issue during his treatment by Dr. Zakroff.

C.  Corizon

A corporation cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Instead, for Plaintiff to make a claim against Corizon, he must "show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). A policy is a "deliberate choice of a guiding principle or procedure made by the [ ] official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 2009). Construed liberally, Plaintiff's First Amended Complaint alleges that Corizon (1) unnecessarily delayed his hernia repair surgery; (2) delayed emergency post-surgery care by transporting him to a distant emergency room; and (3) refused to prescribe necessary pain medication. As to each claim, Plaintiff alleges that Corizon has an unconstitutional "policy to deny medical care predicated upon the cost of the treatment or procedure." (Doc. 79 at ¶ 96). Before delving into Plaintiff's specific arguments, this Court notes that Plaintiff cannot establish Corizon's corporate liability because "individual liability first must be found on an underlying substantive claim." *Winebarger v. Corizon, LLC*, No. 17-04072-CV-C-SRB, 2019 WL 1247514, at *4 (W.D. Mo. Mar. 18, 2019) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)); *see also Jackson v. Douglas*, 270 Fed. App'x 462, 463 (8th Cir. 2008) (per curiam) ("Because no constitutional violation occurred in connection with [plaintiff's] medical treatment, [plaintiff's] claims against [defendants] also fail.").

**(1) Delay of Hernia Repair Surgery**

Delayed referral for surgery can, in certain circumstances, rise to the level of deliberate indifference. *See Buckley v. Correctional Med. Servs., Inc.*, 125 Fed. App'x 98 (8th Cir. 2005) (per curiam). A required element of such a claim, however, is that Corizon "ignored an acute or

escalating situation or that the delay adversely affected [Plaintiff's] prognosis." *Grundy v. Norris*, 26 Fed. App'x 588, 590 (8th Cir. 2001) (per curiam). Defendants argue that there is no verifying medical evidence that Plaintiff suffered any harm as a result of his surgery being delayed until June 2016. Plaintiff responds that he "was suffering from obvious physical symptoms" from early 2012 until his surgery over four years later.

On January 2, 2012, a Corizon provider gave Plaintiff a hernia truss and prescribed an anti-inflammatory pain medication. (Doc. 132 at ¶ 12). After Plaintiff submitted an MSR regarding his hernia pain later that year, he was seen by Dr. Mullen, who diagnosed the hernia as irreducible and placed a referral for a CT scan, which occurred a few weeks later. (*Id.* at ¶¶ 16-20). Plaintiff received follow-up care from a Corizon provider who ordered Salasate to treat Plaintiff's pain. (*Id.* at ¶ 21). Nurse Delarber, meanwhile, scheduled Plaintiff to have his hernia evaluated every six weeks or upon request. (*Id.* at ¶ 22).

Over the next few years, Plaintiff consistently received treatment and medication for his hernia pain. This Court has already dismissed NP Reinholdt, who provided such treatment on October 30, 2014, specifically holding that NP Reinholdt "provided treatment in the form of a physical examination." (Doc. 127 at 7). Plaintiff apparently did not formally complain about his hernia for the entire period from January 30, 2015 to March 9, 2016. (Doc. 132 at ¶¶ 29-30; Doc. 144 at ¶¶ 48-50). Over the years, the record reflects instances where Plaintiff's hernia appeared reducible or was not located during a physical exam. (Doc. 145 at 33, 39). Plaintiff filed an IRR on March 18, 2016 seeking hernia surgery, was promptly referred to an off-site surgeon, and proceeded to have hernia repair surgery on June 22, 2016. (*Id.* at ¶¶ 33-50). Plaintiff was actually scheduled to have surgery on May 5, 2016, but it was delayed due to unrelated dental issues. (*Id.* at ¶ 46).

17

In similar circumstances, various courts have determined that delay in hernia repair surgery did not amount to deliberate indifference. In *McKinney v. Hemsley*, the court considered a four-year delay in performance of hernia repair surgery and determined that summary judgment in favor of defendants was appropriate because "nothing in the record suggests that [plaintiff's] hernia significantly worsened in the roughly four-year period between [the] initial surgical recommendation and [the surgery]." Civ. No. 14-3564 (KM) (JBC), 2019 WL 1293719, at *13 (D.N.J. Mar. 20, 2019). The court specifically noted that the physician regularly monitored the plaintiff's condition and prescribed pain medication. *Id.* at *14; *see also Jackson v. Jackson*, 456 Fed. App'x 813, 815 (11th Cir. 2012) ("The delay in receiving surgery was because the hernia remained treatable without surgery and posed no risk to [plaintiff's] health. Moreover, the delay did not worsen [plaintiff's] condition."); *Edmonds v. Corizon Med. Servs.*, No. 4:20-CV-946 SNLJ, 2020 WL 7695600, at *5 (E.D. Mo. Dec. 28, 2020), *appeal filed* No. 21-1093 (citations omitted) ("Although plaintiff requested hernia surgery as early as August 2019 and it was not recommended by a doctor until August 2020, 'mere disagreement' with the hernia treatment plan and the denial of his requested course of treatment does not support a claim of deliberate indifference.").

The record unquestionably reflects that Plaintiff received substantial medical care from the diagnosis of his hernia until surgery was performed in June 2016. Defendants performed physical examinations, provided a truss, prescribed medications, and obtained CT scans as necessary. *See Shead v. Purkett*, No. 4:07-CV-22 (CEJ), 2009 WL 5220155, at *4 (E.D. Mo. Dec. 31, 2009) ("[T]here is no evidence that any defendant disregarded plaintiff's hernia: he was examined on a regular basis, was educated regarding the signs and symptoms of a worsening condition, and was treated appropriately when the worsening occurred."). Plaintiff did not complain of hernia pain for

18

approximately 14 months from January 2015 to March 2016. He was subsequently scheduled for surgery within three months of submitting an IRR and Offender Grievance. Plaintiff relies heavily on *Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010), in which the Eighth Circuit held that a delay in treating painful medical conditions can constitute deliberate indifference. Unlike in *Langford*, however, Plaintiff has not demonstrated more than mere disagreement with Defendants' medical decisions. Nor has Plaintiff provided evidence beyond his own assertions of a policy or custom of denying necessary medical care due to cost. Finally, as discussed above, the Court again notes that Plaintiff has not administratively exhausted his claims as to the Pre-Surgery Treatment. For each of these reasons, summary judgment in favor of Corizon is warranted as to the Pre-Surgery Treatment claims.

**(2) Distant Emergency Room**

On July 8, 2016, Plaintiff underwent an off-site ultrasound at Vista Imaging which revealed decreased blood flow to the right testicle and partial testicular torsion; the radiologist recommended that Plaintiff be sent to the emergency room. (Doc. 132 at ¶ 55; Doc. 144 at ¶ 72; Doc. 133-1 at 153). Defendants chose to transport Plaintiff to St. Mary's Hospital in Jefferson City, Missouri, which is where Plaintiff had his hernia repair surgery. (Doc. 132 at ¶¶ 66-67; Doc. 144 at ¶¶ 75-81). The record clearly reflects, and Corizon does not deny, that it took approximately four hours (if not longer) from the Vista Imaging radiologist's diagnosis until Plaintiff was admitted at St. Mary's. (Doc. 144 at ¶¶ 75-81). Plaintiff also alleges, and Corizon does not dispute, that the transport vehicle passed numerous other emergency departments on the way to St. Mary's, including one only a few minutes away. (*Id.* at ¶ 76). Corizon claims a decision was made to send Plaintiff to the surgeon who performed the hernia surgery (Doc. 132 at ¶ 66), but it does not appear that this surgeon (Dr. Roberts) was on call or even saw Plaintiff upon arrival.

Delaying emergency medical care by purposefully selecting a distant hospital for treatment can certainly amount to deliberate indifference. The purported reason for choosing the distant emergency room and the consequences of the delay are both relevant to such an analysis. Considering these factors, Plaintiff's claim of deliberate indifference against Corizon cannot succeed. First, Corizon determined in its medical judgment that it was appropriate for Plaintiff to return to the hospital where he received his hernia repair surgery. This medical judgment, while arguably problematic given the distance to St. Mary's hospital, does not amount to deliberate indifference. *See Skinner v. Unknown Grandson*, Civ. No. 05-CV-70556, 2009 WL 909635, at *14 (E.D. Mich. Mar. 31, 2009) (choice of farther emergency room appropriate where staff determined hospital was more likely to have required resources and specialists).

Second, Plaintiff has not demonstrated that the delay caused any further harm. As discussed above, a delay in treatment is only actionable under § 1983 if Corizon "ignored an acute or escalating situation or that the delay adversely affected [Plaintiff's] prognosis." *Grundy v. Norris*, 26 Fed. App'x 588, 590 (8th Cir. 2001) (per curiam). Upon arrival at St. Mary's Hospital, the physician determined that Plaintiff had postoperative right inguinal hernia swelling with resulting diminished blood flow, noting that this was a "normal postoperative finding" and Plaintiff could be discharged as it was "not likely that [Plaintiff] had torsion." (Doc. 132 at ¶ 70; Doc. 133 at 154; Doc. 133-11 at 134, 136). There is no indication that the result would have been any different if Plaintiff had been treated at a closer emergency room. When considering Plaintiff's allegation that the delay in arriving at the emergency violated his constitutional rights, this Court measures "the objective seriousness of the deprivation . . . by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (citations omitted). Because Plaintiff has

offered no evidence indicating that he was harmed by Corizon's decision to transport him to St. Mary's Hospital, there is no viable claim of deliberate indifference.

### (3) Treatment of Post-Surgery Pain

Plaintiff alleges that Corizon "denied any reasonable and effective pain control" based "on the costs of care, and not the serious need of the Plaintiff." (Doc. 79 at ¶ 89). As discussed above, however, this Court has determined that no Corizon provider acted with deliberate indifference in declining to prescribe Neurontin. Relying on their medical judgment, the providers determined not to prescribe Neurontin, which can be abused in the correctional environment, but instead offered other methods of pain management. These decisions were consistent with post-surgery guidance from St. Mary's Hospital. (Doc. 133-11 at 124-25).

 "In order for [corporate] liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (citations omitted). Courts in this district have consistently rejected unsupported allegations that necessary care was not provided due to unidentified cost-containment policies. *See Roebuck v. Glass*, No. 4:18-CV-01498-SRC, 2020 WL 1557173, at *2 (E.D. Mo. Mar. 31, 2020) (Claim that Corizon limited access to specialists to minimize costs "is a mere legal conclusion, unadorned by any factual allegations from which the Court could reasonably infer the existence of such a policy."); *Hardman v. Corizon Med. Servs.*, No. 1:19-CV-00209-JMB, 2020 WL 686025, at *4 (E.D. Mo. Feb. 11, 2020) ("Plaintiff's assertion that Corizon is basing his treatment on financial considerations amounts to an unsupported conclusion that requires the Court to speculate as to his right to relief."). There is no evidence in the record to suggest that any Corizon provider was deliberately indifferent to Plaintiff's alleged nerve pain and declined to prescribe necessary medication pursuant to an unidentified cost-containment policy.

## V.      CONCLUSION

Over multiple years, Plaintiff received extensive medical care from numerous Corizon providers for his hernia. Such care may not have always been perfect, and Plaintiff has disputed numerous facts concerning the care he received. In order to defeat this Motion for Summary Judgment, however, Plaintiff was required to bring forth evidence showing there is a genuine issue of material fact for trial. Instead, Defendants have demonstrated that the evidence simply does not support any of Plaintiff's claims.

The record reflects that Plaintiff failed to administratively exhaust his claims as to the Pre-Surgery Treatment. When Plaintiff filed an IRR seeking hernia surgery, he was scheduled for surgery within three months. Though Plaintiff disputes various portions of the medical records, a reasonable fact finder could not conclude that any individual Defendant was deliberately indifferent to Plaintiff's serious medical needs as to the Pre-Surgery Treatment or Post-Surgery Complications. Each individual Defendant provided reasonable care and made referrals to specialists or other providers when medically indicated. Plaintiff has brought forth no evidence to suggest that these providers had the sufficiently culpable state of mind required to establish a deliberate indifference claim. Finally, a reasonable factfinder could not conclude that Corizon inflicted actionable injury on Plaintiff pursuant to a policy or custom of denying necessary medical care for cost-containment purposes. Corizon also cannot be held liable because there is no viable constitutional claim against any individual provider.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 130) is **GRANTED**. A separate Order of Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Out of Time (Docs. 141, 149) are **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motions to Appoint Counsel (Docs. 142, 151) are **DENIED as moot**.

Dated this 4th day of March, 2021.

_____
JOHN A. ROSS
         UNITED STATES DISTRICT JUDGE

23